1  Raul Perez (SBN 174687)
   Raul.Perez@capstonelawyers.com
2  Robert J. Drexler, Jr. (SBN 119119)
   Robert.Drexler@capstonelawyers.com
3  Jonathan Lee (SBN 267146)
   Jonathan.Lee @capstonelawyers.com
4  CAPSTONE LAW APC
   1875 Century Park East, Suite 1860
5  Los Angeles, California 90067
   Telephone:    (310) 556-4811
6  Facsimile:    (310) 943-0396

7  Attorneys for Plaintiff Edwin Mejia

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10 EDWIN MEJIA, individually, and on          Case No. 2:24-cv-01705-SPG-JC
   behalf of other members of the general
11 public similarly situated,                 Assigned to the Hon. Sherilyn Peace
                                              Garnett
12              Plaintiffs,
                                              **NOTICE OF MOTION AND MOTION
13     vs.                                    FOR PRELIMINARY APPROVAL OF
                                              AMENDED CLASS ACTION AND
14 COPART, INC., a Delaware                   PAGA SETTLEMENT;
   corporation; COPART                        MEMORANDUM OF POINTS AND
15 CATASTROPHE RESPONSE FLEET                 AUTHORITIES**
   LLC, a Delaware limited liability
16 company; COPARTDALLAS, LLC, a              Date:      November 12, 2025
   California limited liability company;      Time:      1:30 p.m.
17 COPARTHOUSTON, LLC, a California           Place:     Courtroom 5C
   limited liability company and DOES 1
18 through 10, inclusive,

19              Defendants.

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 12, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 5C of the above-captioned court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Sherilyn Peace Garnett presiding, Plaintiff Edwin Mejia will, and hereby does, move this Court to:

1.      Preliminarily approve the settlement set forth in the Amended Joint Stipulation of Class Action and PAGA Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.      Conditionally certify the proposed Settlement Class;

3.      Appoint Edwin Mejia as the representative for the Settlement Class;

4.      Appoint Capstone Law APC as Class Counsel;

5.      Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

6.      Appoint CPT Group, Inc. as the Settlement Administrator; and

7.      Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Preliminary Approval of Amended Class Action and PAGA Settlement; (3) the Declaration of Raul Perez; (4) the Declaration of Edwin Mejia; (5) the Amended Joint Stipulation of Class Action and PAGA Settlement and Release; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1

Dated: October 15, 2025

Respectfully submitted,

2

By: /s/ Robert J. Drexler, Jr.

3

Raul Perez
Robert J. Drexler, Jr.
Jonathan Lee

4

**CAPSTONE LAW APC**

5

Attorney for Plaintiff Edwin Mejia

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT
2:24-cv-01705-SPG-JC

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   FACTS AND PROCEDURE ....................................................................3

     A.    Brief Overview of the Litigation and Settlement Negotiations .........3

     B.    The Proposed Settlement Fully Resolves Plaintiff's Claims .............4

         1.    Persons Covered by the Settlement ........................................4

         2.    Settlement Consideration ........................................................4

         3.    Releases by Participating Class Members and PAGA Members .............6

III.   ARGUMENT ..............................................................................................6

     A.    Conditional Class Certification Is Appropriate for Settlement Purposes ..........6

         1.    Plaintiff's Claims Present Predominant Questions of Law and Fact ........7

         2.    Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class ................................13

         3.    Class Settlement Is Superior to Other Available Means of Resolution ........................................................................14

     B.    The Proposed Class Action Settlement Should Receive Preliminary Approval ..............................................................15

         1.    The Relief Provided by the Settlement is Fair and Reasonable ..............18

         2.    The Settlement Provides for an Equitable Method of Allocating Relief to Class Members ..................................20

         3.    There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members ...............20

         4.    The Extent of Discovery Completed Supports Preliminary Approval ....................................................................21

     C.    The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation ..................................21

IV.  CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ...................................................16

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ....................................7

*Arredondo v. Delano Farms Co.*, 2014 U.S. Dist. LEXIS 22658 (E.D. Cal. Feb. 20, 2014) ...........................................................................................................11

*Arredondo v. Delano Farms Co.*, 301 F.R.D. 493 (E.D. Cal. 2014) ......................11

*Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014) ............................................................19

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .............19

*Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021) .............................22

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ..................16

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ..............................22

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ......................13

*Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) ............................................................................................................19

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ..............................................................22

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ..........................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................... 14, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .......................................................17

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .....................................................................23

In *re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ........................................7

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...........16

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .........20

1  *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp.

2      2d 708 (E.D. Pa. 2014) .................................................................................16

3  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................19

4  *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act*

5      *(FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ....................................................19

6  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*,

7      895 F.3d 597 (9th Cir. 2018) ........................................................................16

8  *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.*

9      *Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26,

10      2016).......................................................................................................20

11  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ......................................7

12  *Kisliuk v. ADT Sec. Servs.*, 263 F.R.D. 544 (C.D. Cal. 2008) .........................................12

13  *La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014

14      WL 2967475 (C.D. Cal. June 25, 2014) .........................................................21

15  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ...........................................7

16  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..................................18

17  *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).....................17

18  *Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL

19      4142342 ((S.D. Cal. Aug. 4, 2016) ..............................................................16

20  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......................18

21  *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) ..............................13

22  *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896 (N.D. Cal.

23      July 18, 2013) .......................................................................................17

24  *Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)........................................18

25  *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623 (9th Cir. 2018).......................................10

26  *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL

27      3776765 (N.D. Cal. June 17, 2015) ...............................................................19

28  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................17

1  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) .......................................................7

2  *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ...............................14

3  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ..............................6

4

5  **STATE CASES**

6  *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001) .......................8

7  *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521 (2021) ..............................17

8  *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016) ........................................9

9  *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ................................... 8, 9, 10

10  *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ................................... 22, 23

11  *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ........................................................17

12  *Cicairos v. Summit Logistics,* Inc., 133 Cal. App. 4th 949 (2005) .....................................8

13  *Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334 (2021) .........................................22

14  *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) ..................................... 12, 13

15  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) ..................................................10

16  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007) ........................................8

17  *Noori v. Countrywide Payroll & HR Solution, Inc.*, 43 Cal. App. 5th 957

18      (2019) ...............................................................................................................................13

19  *Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010) ...................................................23

20  *Safeway, Inc. v. Superior Court of Los Angeles Cty.* (Esparza), 238 Cal.

21      App. 4th 1138 (2015) .....................................................................................................10

22  *Sav-On  Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) ........................................8

23  *Sav-on Drug Stores, Inc. v. Sup. Ct.*, 34 Cal.4th 319 (2004) ..........................................10

24

25  **STATE STATUTES**

26  8 Cal. Code of Regs. § 11160 ...............................................................................................10

27  Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ............................13

28  Cal. Lab. Code § 201 ............................................................................................................13

Cal. Lab. Code § 202 ........................................................................................13

Cal. Lab. Code § 203 ........................................................................................13

Cal. Lab. Code § 204 ........................................................................................13

Cal. Lab. Code § 226 ........................................................................................12

Cal. Lab. Code § 226(a) ....................................................................................12

Cal. Lab. Code § 226.7 .......................................................................................7

Cal. Lab. Code § 510 ................................................................................. 10, 13

Cal. Lab. Code § 512 ...........................................................................................7

Cal. Lab. Code § 1194 ................................................................................ 10, 13

Cal. Lab. Code § 1197 ................................................................................ 10, 13

Cal. Lab. Code § 1197.1 .............................................................................. 10, 13

Cal. Lab. Code § 1198 ................................................................................ 10, 13

Cal. Lab. Code § 2699(h) ..................................................................................22

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) ............................................................................... 6, 13, 14

Fed. R. Civ. P. 23(a)(2) ........................................................................................7

Fed. R. Civ. P. 23(a)(4) ............................................................................... 13, 14

Fed. R. Civ. P. 23(b) ............................................................................................6

Fed. R. Civ. P. 23(b)(3) ....................................................................................6, 7

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................15

**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)......................16

Manual for Complex Litigation (4th ed. 2004) ................................................15

## I.  INTRODUCTION

Plaintiff Edwin Mejia ("Plaintiff") seeks preliminary approval of the Amended Joint Stipulation of Class Action and PAGA Settlement and Release,[1] which if approved, would provide considerable monetary relief for approximately 1,500 current and former employees of Defendants Copart, Inc., Copart Catastrophe Response Fleet LLC, Copart-Dallas, LLC, and Copart-Houston, LLC ("Defendants") (collectively with Plaintiff, the "Parties"). The principal terms of the amended Settlement provide for the following:

(1) Conditional certification of a Settlement Class defined as: All persons who worked for Defendants as non-exempt, hourly paid employees in California at any time during the period from January 29, 2020 to November 28, 2024 ("Class Members").

(2) A **non-reversionary** Gross Settlement Amount of $1,270,000. The Gross Settlement Amount includes:

(a) A Net Settlement Fund of $701,167 (the Gross Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Amount, the Class Representative Enhancement Payment, and General Release Payment), which will be allocated to all Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period multiplied by each Class Members' Hourly Wage. **The entire Net Settlement Fund will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment.**

(b) Attorneys' fees in the amount of one-third of the Gross Settlement

---

[1] Hereinafter "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

1    Amount (or $423,333), and litigation costs and expenses not to

2    exceed $15,000, to Capstone Law APC ("Plaintiff's Counsel").

3    (c)    Settlement administration costs of approximately $15,500, to be

4    paid to the jointly selected Settlement Administrator, CPT Group,

5    Inc.

6    (d)    A $100,000 PAGA settlement, of which 75% (i.e., $75,000) will be

7    paid to the Labor & Workforce Development Agency ("LWDA"),

8    and the remaining 25% (i.e., $25,000) ("PAGA Fund"), will be paid

9    to PAGA Members, defined as: All persons who worked for

10    Defendants as non-exempt, hourly paid employees in California at

11    any time during the period from February 27, 2023 through

12    November 28, 2024. **The entire PAGA Fund will be paid to all**

13    **PAGA Members, and without the need to submit claims for**

14    **payment.**

15    (e)    A Class Representative Enhancement Payment of $5,000 to Edwin

16    Mejia for his service on behalf of the Settlement Class, the risks he

17    took in bringing the action on behalf of the class, and a $10,000

18    General Release Payment for a general release of all claims arising

19    out of his employment with Defendants.

20    An objective evaluation of the Settlement confirms that the relief negotiated on

21    the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was

22    negotiated by the Parties at arm's length with helpful guidance from Daniel Turner, Esq.,

23    an experienced and well-respected class action mediator, and the Settlement confers

24    substantial benefits to Class Members. This relief—averaging approximately $467 per

25    Class Member from the Net Settlement Fund—is particularly impressive when viewed

26    against the difficulties encountered by plaintiffs pursuing wage and hour cases.

27    Moreover, by settling now rather than proceeding to trial, Class Members will not have

28    to wait (possibly years) for relief, nor will they have to bear the risk of class certification

being denied or of Defendants prevailing at trial, or of Plaintiff prevailing at trial but losing on appeal.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval and falls within the range of reasonableness. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.   FACTS AND PROCEDURE

### A.   Brief Overview of the Litigation and Settlement Negotiations

Defendants manage inventory and resale of used, wholesale, and salvage title vehicles for insurance companies, rental car companies, local municipalities, financial institutions, and charities, with over 200 locations globally, including 21 locations in California. Defendants employed Plaintiff as a non-exempt Forklift Driver at its Van Nuys, California automobile yard from approximately January 2006 to August 2023. (First Amended Complaint ¶ 5.) Plaintiff's job duties included moving and loading vehicles using a front-end loader or forklift, tracking and documenting vehicle locations and movement around the facility, and completing daily and post-trip inspections of his assigned loader and forklift machines. (*Id.*)

Plaintiff filed this wage and hour action against Defendants in the Los Angeles County Superior Court on January 29, 2024. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) Defendants removed the action to the United States District Court for the Central District of California on March 1, 2024. (*Id.*)

On February 27, 2024, Plaintiff submitted notice of his PAGA claims to the California LWDA. (*Id.* at ¶ 3.) Pursuant to stipulation and order, Plaintiff later added his PAGA claims in a First Amended Complaint on August 20, 2024. (*Id.*)

Following the production of Defendants' California labor policies and procedures materials, and time and wage records for all Class Members from the start of the Class Period through June 2024, the Parties participated in a mediation with Daniel Turner, Esq., on August 28, 2024. (*Id.* at ¶ 4.) At all times, the Parties' negotiations were

adversarial and non-collusive. (*Id.*) Mr. Turner helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Mr. Turner's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiff's claims. (*Id.*)

Plaintiff filed a Motion for Preliminary Approval of the Class Action and PAGA Settlement (ECF No. 32) on May 2, 2025.  The Court denied the motion without prejudice on July 16, 2025. (ECF No. 35.) Thereafter, the Parties engaged in further settlement negotiations, during which the Parties agreed on various amendments to the settlement to address the concerns identified by the Court in its order denying the motion. The terms of the amended settlement are now set forth in the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release. (Perez Decl. ¶ 5, Ex. 1.)

**B.     The Proposed Settlement Fully Resolves Plaintiff's Claims**

**1.     Persons Covered by the Settlement**

All Class Members and PAGA Members are entitled to payments from the Settlement. Class Members are defined as all persons who worked for Defendants as non-exempt, hourly paid employees in California at any time during the period from January 29, 2020 to November 28, 2024. (Settlement Agreement ¶¶ 4, 6.) There are approximately 1,500 Class Members.

PAGA Members are defined as all persons who worked for Defendants as non-exempt, hourly paid employees in California at any time during the period from February 27, 2023 through November 28, 2024. (*Id.* at ¶¶ 18, 20.) There are approximately 900 PAGA Members.

**2.     Settlement Consideration**

Plaintiff and Defendants have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $1,270,000. The Gross Settlement Amount includes: (1) automatic payments to all Participating Class Members— meaning, all Class Members except those who submit timely and valid Requests for

Exclusion—from the Net Settlement Fund; (2) $423,333 in attorneys' fees (i.e., one-third of the common fund) and up to $15,000 in litigation costs to Plaintiff's Counsel; (3) Settlement Administration Costs of approximately $15,500; (4) a $75,000 payment to the LWDA and a $25,000 payment to PAGA Members; and (5) a Class Representative Enhancement Payment of $5,000 for Plaintiff's service on behalf of the Settlement Class and the risks he took in bringing his representative claims, and a General Release Payment of $10,000 for a general release of all claims arising out of his employment with Defendants. (Settlement Agreement ¶¶ 35-41.)

Payments to Participating Class Members will be made from the Net Settlement Fund. (Settlement Agreement ¶ 45(a).) The individual allocations will be calculated on a pro-rata basis using the number of weeks worked by each Class Member during the Class Period <u>multiplied by each Class Member's Hourly Wage</u>. (*Id.*)

This is a fair and equitable means of apportioning the Net Settlement Fund to Class Members. Class Members who worked for a longer duration during the Class Period, or who were paid higher wages relative to other Class Members, will receive proportionally larger payments than those employees who worked for shorter durations or who earned fewer wages. Given that there are approximately 1,500 Class Members, the average net recovery will be approximately $467. This average net recovery is significantly greater than many other wage and hour class action settlements approved by California state and federal courts.[2]

---

[2] *See, e.g., Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct. Dec. 7, 2010) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct. Sept. 29, 2006) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct. Sept. 10, 2009) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct. Jan. 27, 2009) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct. Jan. 20, 2006) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super.

Payments to PAGA Members will be made from the PAGA Fund. (Settlement Agreement ¶ 46(a).) The individual allocations will be calculated on a pro-rata basis using the number of pay periods worked by each PAGA Member during the PAGA Period. (*Id.*) This is a fair and equitable means of apportioning the PAGA Fund to PAGA Members. PAGA Members who worked for a longer duration during the PAGA Period will receive proportionally larger payments than those employees who worked for shorter durations. Given that there are approximately 900 PAGA Members, the average net recovery will be approximately $28.

### 3. Releases by Participating Class Members and PAGA Members

In exchange for the Gross Settlement Amount, Plaintiff and Participating Class Members will release the Released Class Claims during the Class Period. (Settlement Agreement ¶ 59.) And in exchange for the PAGA Settlement Amount, Plaintiff, the LWDA, and PAGA Members will release the Released PAGA Claims during the PAGA Period. (*Id.* at ¶ 60.)

## III. ARGUMENT

### A. Conditional Class Certification Is Appropriate for Settlement Purposes

The parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Where, as here, workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D.

---

Ct. July 23, 2010) (average net recovery of approximately $20); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) (average net recovery of approximately $50); and *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct. Oct. 11, 2012) (average net recovery of approximately $80).

Cal. 2008).

Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359, 131 S. Ct. 2541 (2011). However, the fact that class members may have been affected by a defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar* to certification. *See Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

### 1.    Plaintiff's Claims Present Predominant Questions of Law and Fact

For a class to be certified, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3) also requires that the common questions of law or fact predominate over any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap. *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012). Here, each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues.

**Meal Period Claim**—"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a). Additionally, an employee may not work more than 10 hours without being provided a second meal period. *Id.* Where an employee does not receive a timely meal period of at least 30 minutes, the employer is required to pay the employee one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(b).

Plaintiff alleges, *inter alia*, that Defendants had a company-wide policy and/or

1   practice of understaffing their locations, which led to a failure to provide Class Members

2   with adequate meal period coverage, because there were too few employees on duty to

3   relieve employees to take timely 30-minute meal periods. As a result of this inadequate

4   meal period coverage, Class Members were not always afforded uninterrupted 30-

5   minute meal periods during shifts when they were entitled to receive a meal period.

6       It is well-settled that an employer is liable for failing to provide meal periods if

7   the employer in any way discouraged employees from taking their required meal

8   periods. As the California Supreme Court held in *Brinker Rest. Corp. v. Super. Ct.*, 53

9   Cal. 4th 1004, 1040 (2012):

> An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. [7] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and **does not impede or discourage them from doing so.**

14  (emphasis added); *see also Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949,

15  962-63 (2005); *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094, 1104 (2007)

16  ("An employee forced to forgo his or her meal period ... loses a benefit to which the law

17  entitles him or her.")

18      Plaintiff contends that his meal period claim under this theory is readily

19  certifiable. Even before *Brinker,* class certification rules were not as demanding as

20  employers typically represent. "Predominance is a comparative concept,' and 'the

21  necessity for class members to individually establish eligibility and damages does not

22  mean individual fact questions predominate.' [Citations.]" *Sav-On Drug Stores, Inc. v.

23  Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On*") (citation omitted). Thus, "[a] class

24  action can be maintained even if each class member must at some point individually

25  show his or her eligibility for recovery or the amount of his or her damages, so long as

26  each class member would not be required to litigate substantial and numerous factually

27  unique questions to determine his or her individual right to recover." *Acree v. General

28  Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 397 (2001), fn. omitted.

Accordingly, Plaintiff contends that his meal period theory of liability yields the following predominant common questions of fact and law:

- Did Defendants maintain and implement a uniform meal period policy and/or in practice that did not provide meal periods?

- Did Defendants fail to pay premiums whenever it failed to provide meal periods?

Plaintiff maintains that common evidence—in the form of Defendants' written policies, corporate representative testimony, and Class Member declarations—would answer the predominant common questions and would show that the combined effect of Defendants' meal period policies was that it did not always provide Class Members with compliant meal breaks.

**Rest Period Claim—**At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 273 (2016). Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiff and class members are entitled to recover from Defendants one additional hour of pay at their regular rates of pay for each workday that a required rest period was not authorized and permitted.

Like his meal period claim, Plaintiff alleges that systemic understaffing regularly prevented employees from taking timely 10-minute rest periods. In *Brinker*, the California Supreme Court made it clear that it is not enough for an employer to merely have compliant written policies. Rather, an employer satisfies its meal period and rest break obligation only "if it relieves its employees of all duty, relinquishes control over

their activities and permits them a reasonable opportunity to take an uninterrupted [a] break, and does not ***impede or discourage*** them from doing so." *Brinker Rest. Corp.*, 53 Cal. 4th at 1040 (emphasis added). Although the Court's analysis focused on meal periods, the same analysis is true for rest breaks.

Because the failure to provide rest breaks is uniform and applies across-the-class, this "theory of recovery ... is, as an analytical matter, likely to prove amenable to class treatment." *Sav-on Drug Stores, Inc. v. Sup. Ct.*, 34 Cal.4th 319, 327 (2004). Lack of a policy to provide payment of meal or rest premiums under any circumstances is amenable to class treatment. *Safeway*, *Inc.*, 238 Cal. App. 4th at 1150, 1158-62.

**Off-the-Clock Claim—**California law defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000). Thus, "an employee who is subject to an employer's control does not have to be working during that time to be compensated[.]" *Id.* at 582; *see also* 8 Cal. Code of Regs. § 11150(2(K)) (defining "hours worked" as the "time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."). Requiring employees to work without compensation violates California's minimum wage and overtime laws. *See* Cal. Lab. Code §§ 510, 1194, 1197, 1197.1 and 1198. An employer is liable for off-the-clock "hours worked" if it "knew or should have known off-the- clock work was occurring." *Brinker*, 53 Cal. 4th at 1051-52.

Plaintiff's unpaid minimum and overtime wage claims stem from the unpaid meal breaks and off-the-clock pre-shift, post-shift, and otherwise off-shift work. "[C]ompensable time is 'the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.'" *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 637 (9th Cir. 2018), citing *Morillion*, 22 Cal. 4th at 578 (quoting Cal. Code Regs., tit. 8, §

1   11050 (G)). The standard is expressed in the disjunctive, meaning that "time is

2   compensable when an employee is working or under the control of his or her employer."

3   *Sali*, 889 F.3d at 637, citing *Morillion*, 22 Cal. 4th at 578.

4   Notably, it is not necessary for Plaintiff to show that Defendants had a formal

5   written policy requiring class members to work off-the-clock; a showing of a common

6   practice suffices for the Court to grant certification. Thus, for instance, in *Arredondo v.

7   Delano Farms Co.*, 301 F.R.D. 493 (E.D. Cal. 2014), the plaintiffs submitted

8   declarations from putative class members stating that they were required to perform off-

9   the-clock work before and after their scheduled shifts. The court rejected the defendant's

10  reliance on its written policies prohibiting off-the-clock work the "'stringent policies'

11  adopted by defendants may not have been followed as defendants attest." *Id.* at 510.

12  Plaintiff's off-the-clock claim raises the predominant common questions of law

13  and fact:

14          •   Whether Defendants' uniform policy of scheduling more tasks than could

15              reasonably be performed during Class Members' regular shifts forced

16              Class Members to work off-the-clock in order to complete the assigned

17              tasks.

18          •   Whether Defendants violate California law by forcing employees to work

19              off-the-clock by scheduling too many tasks that cannot reasonably be

20              performed during the employees' scheduled shifts.

21  **Business Expense Reimbursement Claim**—Plaintiff alleges that Defendants

22  should have reimbursed Class Members for using their personal cellphones for business

23  purposes. In *Richie v. Blue Shield of California*, No. C-13-2693 EMC, 2014 WL

24  6982943 (N.D. Cal. Dec. 9, 2014), the district court certified a telephone expense

25  reimbursement class after finding, under Rule 23(a)(2): "that a common question exists

26  as to Plaintiff's telephone-related expense claim under § 2802" and finding that "Blue

27  Shield appears to have a uniform reimbursement policy with regards to work-related

28  telephone expenses." *Id.* at *16- 17. The Court also found a common question of law

was whether the Defendant's policy for reimbursement was consistent with California law. *Id.* (citing *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014) ("Cochran")). *Cochran* holds that "when employees must use their personal cell phones for work-related calls, Labor Code section 2802 requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills." *Id.* at 1140.

In addressing the controlling California authority in *Cochran*, the district court in *Richie* noted its holding that "the employer was required to 'reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone,' even when the employee did not incur an 'extra expense' as a result of that call (for example, when the employee had an "unlimited minutes" plan). *Id.* (citing *Cochran*, at 1144) ("The answer is that reimbursement is always required. Otherwise, the employer would receive a windfall because it would be passing its operating expenses onto the employee. Thus, to be in compliance with section 2802, the employer must pay some reasonable percentage of the employee's cell phone bill."). Under *Cochran*, Labor Code § 2802(a) calls for a straightforward solution—an employer is always obligated to reimburse an employee for his or her use of that employee's personal cell phone for work-related reasons. The solution is especially applicable here.

Plaintiff also alleges that Defendants should have reimbursed Class Members for the costs of purchasing protective equipment, like steel-toed boots.

**Wage Statement Claim**—Labor Code section 226(a) provides, in pertinent part, that an employer must provide an "accurate itemized" wage statement showing net and gross wages earned. Cal. Lab. Code § 226(a). "[A]n employee has a statutory right to an accurate pay stub." *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010) ("*Jaimez*"); *see also Kisliuk v. ADT Sec. Servs.*, 263 F.R.D. 544, 548 (C.D. Cal. 2008). "The purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the

information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper." DLSE Opinion Letter 2006.07.06 at 2. One of the requirements for a legally compliant wage statement is that it includes "the name and address of the legal entity that is the employer." Labor Code § 226(a)(8) (emphasis added).

Based on the preceding allegations, Plaintiff alleges that Defendants failed to issue Class Members accurately itemized wage statements. Plaintiff contends that whether Defendants' wage statements were properly formatted is an inherently common, certifiable question. Similar wage statement claims have been certified. *See*, *e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009) ("Accordingly, particularly in light of the fact that the pay stubs and settlement summaries provided to California drivers are standardized documents, the Court finds that Plaintiffs have demonstrated that certification of their pay stub claim is appropriate."); *Jaimez*, 181 Cal. App. 4th at 1306 (reversing and ordering certification of meal period, rest period, and wage statement subclasses).

**The Court Should Certify Plaintiff's Derivative Claims**—Plaintiff's complaint includes claims pursuant to Labor Code sections 201, 202, 203, 204, 226, 1194, 1197, 1197.1, 1198 and California Business & Professions Code sections 17200, *et seq*. These claims are derivative of Plaintiff's underlying claims for minimum wage violations and meal and rest period premiums. Thus, for the same reasons that the Court should conditionally certify the underlying claims, it should also certify these derivative claims. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

### 2.    Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and

1    competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

2          The Rule 23(a) adequacy requirement is met here as Plaintiff has and will

3    represent putative Class Members with a focus and zeal true to the fiduciary obligation

4    that he has undertaken. Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-

5    counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

6    ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

7    the class?"). The attorneys at Capstone have successfully certified numerous class

8    actions by way of contested motion in state and federal court, and have negotiated

9    settlements totaling over 200 million dollars on behalf of hundreds of thousands of Class

10   Members. (*See* Perez Decl. ¶¶ 56-64, Ex. 2.)

11          **3.      Class Settlement Is Superior to Other Available Means of**

12          **Resolution**

13          Resolving all Class Members' claims through a single class action is superior to a

14   series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no

15   advantage in individual members controlling the prosecution of separate actions. There

16   would be less litigation or settlement leverage, significantly reduced resources and no

17   greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the

18   Settlement negotiated on behalf of the Class demonstrates the advantages of a collective

19   bargaining and resolution process.

20          Addressing the allegations through a class action is superior to individual

21   litigation or any alternative methods that may exist. This action was filed precisely

22   because Plaintiff believed those alternatives would have proven ineffective in addressing

23   the problem on a class-wide basis. Additionally, although the value of the claims is not

24   insignificant, the amount in controversy is not nearly enough to incentivize individual

25   action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010)

26   ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an

27   individual basis, this [superiority] factor weighs in favor of class certification.").

28

**B.    The Proposed Class Action Settlement Should Receive Preliminary Approval**

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1.    Preliminary approval of the proposed settlement;

2.    Notice to the class providing them an opportunity to exclude themselves; and

3.    A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361

1    F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027

2    (endorsing the trial court's "proper deference to the private consensual decision of the

3    parties" when approving a settlement). As this Circuit has observed, "settlements offer

4    parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .

5    The economics of litigation are such that pre-trial settlement may be more advantageous

6    for both sides than expending the time and resources inevitably consumed in the trial

7    process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

8         At the preliminary approval stage, the Court evaluates whether the settlement is

9    within the "range of reasonableness," and whether notice to the class and the scheduling

10   of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg,

11   *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of

12   the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*,

13   961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to

14   meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v.

15   Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4,

16   2016).

17        The Court must, however, assure itself that the settlement was not the product of

18   "collusion" by checking for "subtle signs that class counsel have allowed pursuit of their

19   own self-interests . . . to infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th

20   Cir. 2015). The Ninth Circuit has identified three such signs: (1) "when counsel receive a

21   disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear

22   sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee

23   request by class counsel); and (3) when the parties create a reverter that returns unclaimed

24   fees to the defendant (the "*Bluetooth* Factors"). *In re Bluetooth Headset Prod. Liab. Litig.*,

25   654 F.3d 935, 947 (9th Cir. 2011). However, "for all these factors, "subtle signs," and red

26   flags… the underlying question remains this: **Is the settlement fair**?" *Volkswagen "Clean

27   Diesel,"* 895 F.3d at 611 (emphasis added).

28        For the reasons discussed in detail below, this Settlement is fair, and with the

exception of the "clear sailing" provision (*see infra*), none of the *Bluetooth* Factors are present here. Plaintiff's Counsel do not seek a disproportionate share of fees, because under controlling California law,[3] "[f]ee awards in class actions average around one-third of the recovery regardless of whether the percentage method or the lodestar method is used." *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) (quoting *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, fn. 11 (2008)) (internal quotations omitted).

Additionally, in the Ninth Circuit most common fund fee awards exceed the benchmark, averaging approximately 30% of the common fund. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (the "exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%...."); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage.") (internal quotation marks omitted).

Further, by agreeing to resolve attorneys' fees amicably, Defendants' counsel averted the possibility that Class Counsel might apply for, and receive, a much larger award, and thus avoided a "second major litigation" on attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). And because the award of fees will be ultimately decided by a separately

---

[3] In diversity actions, federal courts must apply state law to determine whether a party has a right to attorneys' fees, and if so, how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

1  filed motion after preliminary approval, the presence of a clear-sailing provision should

2  not provide a barrier to preliminary approval of the Amended Settlement.

3       Finally, there is no "reverter" of unclaimed funds to Defendants, and the settlement

4  was negotiated at arm's-length after a mediation with Daniel Turner, Esq., an experienced

5  mediator of wage and hour class actions.

6            **1.**    **The Relief Provided by the Settlement is Fair and Reasonable**

7       As discussed in detail in Plaintiff's Counsel's declaration in support of this

8  Motion, an objective evaluation of the Settlement confirms that the relief negotiated on

9  the Class's behalf—a $1,270,000 non-reversionary total Gross Settlement Amount—is

10  fair, reasonable, and valuable. (Perez Decl. ¶¶ 12-48.) The Settlement was negotiated by

11  the Parties at arm's length with helpful guidance from Daniel Turner, Esq., and the

12  Settlement confers substantial benefits to Class Members. The relief offered by the

13  Settlement is particularly impressive when viewed against the difficulties encountered by

14  plaintiffs pursuing wage and hour cases.

15       In determining whether a settlement agreement is fair, adequate, and reasonable

16  to all concerned, the Court may consider the strength of the plaintiff's case and the

17  amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151

18  F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing

19  more than an amalgam of delicate balancing, gross approximations, and rough justice,"

20  and there is no single "formula" to be applied; rather, the Court may presume that the

21  parties' counsel and the mediator arrived at a reasonable range of settlement by

22  considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv Comm'n*,

23  688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th

24  Cir. 2009).

25       Understandably, for purposes of evaluating the settlement's reasonable, this

26  estimate must be "tempered by factors such as the risk of losing at trial, the expense of

27  litigating the case, and the expected delay in recovery (often measured in years)." *In re*

28  *Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

295 F.R.D. 438, 453 (C.D. Cal. 2014). Ultimately, Plaintiff's Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendants' maximum theoretical liability by: (a) the strength of the defenses to the merits of Plaintiff's claims; (b) the risk of class certification being denied; (d) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiff's claims, or barred evidence/testimony in support of the claims; (d) the risk of losing at trial; (e) the chances of a favorable verdict being reversed on appeal; and (f) the difficulties attendant to collecting on a judgment (collectively, the "Class Discount Factors").

After offsetting Defendants' maximum potential exposure for the class claims by the Class Discount Factors, and after considering the weight of the evidence, the clarity of the applicable law, and the strength of the factual and legal defenses likely to be asserted by the Defendants at trial and the availability of good faith defenses (*see* Perez Decl. ¶¶ 26-48), Plaintiff determined that a more realistic estimate of the total amount of damages and penalties that he would likely recover at trial for the class claims was approximately $2,295,295. (Perez Decl. ¶ 47.) By this measure, the $701,167 Net Settlement Fund amounts to approximately 30% of Defendants' realistic estimated exposure at trial for the class claims, which is well within the range of reasonableness.[4]

---

[4] *See, e.g., Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding settlement fund that was an estimated 8% of the total maximum recovery fair in relation to the risks of continued litigation); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement amount in the range of 6%-9% of the total possible damages); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4–5 (N.D. Cal. June 17, 2015) (approving a final settlement representing 7.3% of the plaintiffs' estimated trial award in wage-and-hour class action); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of gross settlement representing 8% of the maximum recovery and net settlement representing 5% of the maximum recovery).

### 2. The Settlement Provides for an Equitable Method of Allocating Relief to Class Members

One of the concerns identified by the Court with respect to the original formula for allocating payments from the Net Settlement Fund was that it assigned the same value to all Workweeks despite differences between Class Members' hourly rates of pay, and as a result, lacked the nuance and precision the Court deemed appropriate for the proposed Settlement Class of all California non-exempt employees.

In response, the Parties have revised the settlement formula to apportion payments from the Net Settlement Fund based on the total number of Workweeks worked by each Class Member during the Class Period <u>multiplied by their Hourly Wage</u>; i.e., the "regular hourly wage that each Class Member was earning as of the date of their separation from employment with Defendants during the Class Period, or, if the Class Member was employed by Defendants as of November 28, 2024, the regular hourly wage in effect for such Class Member as of that date." (*Id.* at 14, 45.)

The Parties believe that that amended formula addresses the Court's original concerns, and now provides a more equitable and precise method for apportioning payments from the Net Settlement Fund.

### 3. There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016). This Settlement contains no "glaring deficiencies" *Id.* at *14.

The Settlement does not provide for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id.* at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

1   Moreover, no segment of the Class is given preferential treatment. Plaintiff will also

2   seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in

3   an amount that is well within the range of such awards in the Ninth Circuit for his work

4   on the behalf of the Class, the reputation risk undertaken, and for the execution of a

5   general release. *See infra*, § III.G. *See, e.g.*, *La Fleur v. Medical Management Intern,*

6   *Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding

7   $15,000 to each named plaintiff for services to the Class, reputational harm and general

8   release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

### 4.    The Extent of Discovery Completed Supports Preliminary Approval

11   As set forth in greater detail in Plaintiff's Counsel's declaration in support of the

12   Motion, based on their analysis of documents and class data produced by Defendants,

13   including Defendants' California labor policies and procedures materials and Class

14   Members' time and pay records, Plaintiff's Counsel were able to realistically assess the

15   value of Plaintiff's claims and intelligently engage defense counsel in settlement

16   discussions that culminated in the proposed settlement now before the Court. (Perez

17   Decl. ¶¶ 6-10.)

18   By engaging in a thorough investigation and evaluation of Plaintiff's claims,

19   Plaintiff's Counsel can opine that the Settlement, for the consideration and on the terms

20   set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best

21   interests of Class Members in light of all known facts and circumstances, including the

22   risk of significant delay and uncertainty associated with litigation, various defenses

23   asserted by Defendant. (*Id.* at ¶ 11.)

### C.    The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation

27   Based on information and evidence produced by Defendants during discovery,

28   Plaintiff determined that aggrieved employees worked a combined total of

1    approximately 20,000 pay periods during the PAGA statute of limitations period

2    ("PAGA Period"). Unless otherwise provided by the Labor Code, PAGA civil penalties

3    for Labor Code violations are calculated according to Labor Code 2699(f)(2): If, at the

4    time of the alleged violation, the person employs one or more employees, the civil

5    penalty is $100 for each aggrieved employee per pay period for the initial violation and

6    $200 for each aggrieved employee per pay period for each subsequent violation (the

7    "subsequent violation penalty").

8          However, a number of courts have found that the "subsequent" penalty under

9    PAGA applies only after a <u>court</u> or the <u>Labor Commissioner</u> determines that the

10    employer has violated the Labor Code. *See Gunther v. Alaska Airlines, Inc.*, 72 Cal.

11    App. 5th 334, 356 (2021) ("the increased $200 civil penalty for 'subsequent violation[s]'

12    does not apply unless [Plaintiff] presents evidence that the Labor Commission or a court

13    notified [Defendant] that it was in violation of the Labor Code."); *Bernstein v. Virgin*

14    *Am., Inc*., 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened

15    civil penalties" because the defendant was not given notice by the Labor Commissioner

16    when the "subsequent" violations occurred). Under this line of cases, Defendants'

17    exposure would be approximately $2,000,000 = 20,000 violative pay periods × $100.

18          It should be noted that PAGA gives the Court wide latitude to reduce the amount

19    of civil penalties "based on the facts and circumstances of a particular case" when "to do

20    otherwise would result in an award that is unjust, arbitrary and oppressive, or

21    confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have

22    considered issues including whether the employees suffered actual injury from the

23    violations, whether the defendant was aware of the violations, and the employer's

24    willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504,

25    528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter*

26    *v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No.

27    ED CV 10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

28          For example, during the penalty phase of trial in *Carrington*, the plaintiff

1  requested PAGA penalties in the amount of approximately $70 million. The trial court

2  instead awarded only $150,000—**or 0.21% of the maximum**—and stated that this

3  reduction was warranted because imposing the maximum penalty would be "unjust,

4  arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with

5  meal period obligations and because the court found the violations were minimal.

6  *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's

7  reduced award of a $150,000 penalty under PAGA. *Id.* at 529.

8       Plaintiff therefore determined an appropriate range of settlement for PAGA

9  penalties as a percentage of the settlement range that was consistent with other hybrid

10  class/PAGA settlements approved by California courts. Where PAGA penalties are

11  negotiated in good faith and "there is no indication that [the] amount was the result of

12  self-interest at the expense of other Class Members," such amounts are generally

13  considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S.

14  Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*,

15  186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in

16  approving a settlement which does not allocate any damages to the PAGA claims.").

17  **IV.    CONCLUSION**

18       The Parties have negotiated a fair and reasonable settlement of claims. Having

19  appropriately presented the materials and information necessary for preliminarily

20  approval, the Parties request that the Court preliminarily approve the settlement.

21  Dated: October 15, 2025                Respectfully submitted,

22                                        By: /s/ Robert J. Drexler, Jr.
                                          Raul Perez
23                                        Robert J. Drexler, Jr.*
                                          Jonathan Lee
24                                        **CAPSTONE LAW APC**

25                                        Attorney for Plaintiff Edwin Mejia

26                                        **\* L.R. 11-6.2 CERTIFICATION**—
                                          Counsel of record for Plaintiff certifies that
27                                        this memorandum contains 6621 words,
                                          which complies with the word limit of L.R.
28                                        11-6.1

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT
2:24-cv-01705-SPG-JC