1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| EDWIN MEJIA, individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>COPART INC., a Delaware corporation; COPART CATASTROPHE RESPONSE FLEET LLC, a Delaware limited liability company; COPARTDALLAS, LLC, a California limited liability company; COPARTHOUSTON, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:24-cv-01705-SPG-JC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT [ECF NO. 40]** |

23

24

25

26

27

28

Before the Court is the Motion for Preliminary Approval of Amended Class Action and PAGA Settlement (ECF No. 40 ("Motion")) filed by Plaintiff Edwin Mejia ("Plaintiff").  The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

-1-

I.     BACKGROUND

A.     Procedural History

The Court previously summarized the factual background of this case in its July 16, 2025, order granting, in part, and denying, in part, Plaintiff's motion for preliminary approval of class action settlement. (ECF No. 35 ("July 2025 Order") at 2-3). In brief, this case is a putative wage-and-hour class action lawsuit brought by Plaintiff against Defendants Copart, Inc., Copart Catastrophe Response Fleet LLC, Copart-Dallas, LLC, and Copart-Houston, LLC ("Defendants"). (ECF No. 22 ("FAC")). Plaintiff alleges that Defendants violated California laws on overtime, minimum wage, meal and rest periods, maintenance of payroll records, timely payment of wages on termination and during employment, and payment of business expenses, and Plaintiff asserts related claims under the California Labor Code, as well as claims under California's Unfair Competition Law ("UCL") and Private Attorneys General Act ("PAGA").

Plaintiff initially filed the class-action complaint in Los Angeles County Superior Court on January 29, 2024. (ECF No. 1-1). Defendants removed the case to this Court on March 1, 2024. (ECF No. 1). On August 20, 2024, Plaintiff filed the FAC, adding the PAGA claim. (FAC). On November 27, 2024, before Defendants had filed any responsive pleading to the FAC, the parties filed a joint notice of settlement. (ECF No. 26).

Plaintiff previously filed a motion for preliminary approval, which the Court partially denied. *See* (July 2025 Order). While the Court granted the motion to conditionally certify the class, appoint Plaintiff as Class Representative, and appoint Capstone Law APC as Class Counsel, the Court denied preliminary approval without prejudice to refiling. In doing so, the Court identified the following deficiencies: (1) Plaintiff's estimates of the maximum potential recovery included certain unexplained assumptions and failed to include estimates for all claims being settled; (2) Plaintiff inadequately identified the costs, risks, defenses, and delays specific to his claims; (3) Plaintiff's proposed class payments did not account for differences in pay and hours worked among class members; (4) the proposed attorney's fees exceeded the standard

1    Ninth Circuit benchmark without adequate explanation; and (5) Plaintiff failed to

2    adequately explain the basis for awarding both a class representative award and a general

3    release payment. (*Id.* at 24-25).

4          Plaintiff filed the instant Motion on October 15, 2025, seeking preliminary approval

5    of an amended settlement agreement. (Mot.). The Motion is accompanied by a declaration

6    from Plaintiff, (ECF No. 40-1 ("Mejia Declaration")), a declaration from Plaintiff's

7    Counsel, (ECF No. 40-2 at 1-25 ("Perez Declaration")), and the amended class action

8    settlement, (ECF No. 40-2 at 27-58 ("Amended Settlement")), among other supporting

9    documents.

10        **B.**    **Amended Settlement Agreement**

11          The parties' Amended Settlement contains the following key provisions:

12        1.    <u>Class Definition</u>

13          The Amended Settlement defines the Class as "all persons who worked for

14    Defendants as non-exempt, hourly paid employees in California at any time during the

15    Class Period." (Amended Settlement at 2). The Class Period is defined as "the period

16    from January 29, 2020 to November 28, 2024." (*Id.*). As used in the Amended Settlement,

17    the term "Defendants" includes all the named Defendants in this action. (*Id.*). Based on

18    Defendants' records, Plaintiff estimates the Class to include approximately 1,500

19    members. (*Id.* at 6; Mot. at 10).

20          The Amended Settlement also defines a group of "PAGA Members" consisting of

21    "all persons who worked for Defendants as non-exempt, hourly paid employees in

22    California at any time during . . . the period from February 27, 2023 through November 28,

23    2024." (Amended Settlement at 4). Plaintiff estimates that there are approximately 900

24    PAGA Members. (Mot. at 13).

25        2.    <u>Settlement Amount</u>

26          The gross settlement amount agreed upon by the parties is $1,270,000. (Amended

27    Settlement at 7). The Amended Settlement allocates $100,000 of the gross settlement for

28    settlement of claims for civil penalties under PAGA, 25% of which is allocated to PAGA

1  Members, and 75% of which is to be paid to the California Labor and Workforce
2  Development Agency ("LWDA"). (*Id.* at 9). The Amended Settlement also allocates an
3  estimated $15,500 for settlement administration costs. (*Id.*). Additionally, Plaintiff seeks
4  a class representative award of $5,000 and a "general release payment" of $10,000 for the
5  release of all claims arising out of his employment with Defendants. (*Id.* at 8). After
6  subtracting these costs, as well as attorney's fees and costs, the remaining net settlement
7  fund will be distributed in its entirety to participating class members. (*Id.* at 10). The
8  Amended Settlement provides that payments will be calculated based on the total number
9  of workweeks worked by each class member, multiplied by each employee's hourly wage,
10  and divided by the aggregate total number of workweeks. (*Id.*). Plaintiff estimates that
11  this will result in an average net recovery of approximately $467 per Class Member and a
12  net recovery of approximately $28 per PAGA Member. (Mot. at 14-15).

13              3.      Attorney's Fees and Costs

14      The putative Class seeks to be represented by attorneys Robert J. Drexler, Jr.,
15  Jonathan Lee, Melissa Grant, and Raul Perez of Capstone Law APC. The Settlement
16  Agreement provides that Class Counsel will seek attorney's fees of not more than
17  $423,333, plus litigation costs not to exceed $15,000, and that Defendants will not oppose
18  a motion for these costs. (Amended Settlement at 7-8). Any amount not ultimately
19  awarded by the Court will become part of the net settlement fund and be available for
20  distribution to the Class Members. (*Id.* at 8).

21              4.      Release of Persons and Claims

22      The Amended Settlement operates to release from claims certain "Released Parties,"
23  defined to mean "Defendants, their past or present officers, directors, shareholders, agents,
24  principals, heirs, representatives, accountants, auditors, consultants, insurers and
25  reinsurers, and their respective successors and predecessors in interest, subsidiaries,
26  affiliates, parents and attorneys, if any." (Amended Settlement at 5).

27      Under the Amended Settlement, the Class Representative Plaintiff will release
28  Defendants from "all claims arising out of his employment with Defendants." (*Id.* at 8).

1   In exchange for this general release, Defendants agree not to oppose or impede any

2   application for a General Release Payment of up to $10,000, paid from the gross settlement

3   amount.  (*Id.* at 8-9).

4   Next, all Class Members who do not opt out of the Amended Settlement will release

5   the Released Parties from (1) the claims alleged in the lawsuit as set forth in the FAC;

6   (2) any claims for injunctive relief, declaratory relief, or restitution that were alleged or

7   could have been alleged under the facts, allegations, or claims pleaded in the complaint;

8   and (3) any and all other claims under California or federal law that could have been alleged

9   under the same or similar facts, allegations, or claims pleaded in the FAC and based on the

10  alleged Labor Code violations.  (*Id.* at 15-16).

11  Finally, all PAGA Members will release the Released Parties from any and all claims

12  for PAGA violations "as alleged in the Operative Complaint, which includes those alleged

13  in the PAGA Notice sent to the LWDA by Plaintiff that arose at any time during the PAGA

14  Period." (*Id.* at 16).  PAGA Members will not have the opportunity to opt out of, or object

15  to, the PAGA Member Payment and will be bound by the release regardless of their

16  participation in the Class.  (*Id.* at 17).

17  **II.   LEGAL STANDARD**

18  Parties seeking class certification for settlement purposes must satisfy the

19  requirements of Federal Rule of Civil Procedure 23.  *Amchem Prods., Inc. v. Windsor*, 521

20  U.S. 591, 620 (1997).  In considering such a request, the court must give the Rule 23

21  certification factors "undiluted, even heightened, attention in the settlement context." *Id.*

22  Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a

23  certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).

24  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or

25  unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100

26  (9th Cir. 2008).  Accordingly, before approving a class action settlement under Rule 23, a

27  district court must conclude that the settlement is "fundamentally fair, adequate, and

28  reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In the Ninth

1   Circuit, there is a "strong judicial policy that favors settlements, particularly where
2   complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th
3   Cir. 2015) (citation omitted).

4          Court approval of a class action settlement requires a two-step process—a
5   preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*,
6   No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of
7   whether to approve a proposed class action settlement entails a two-step process."); *West
8   v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D.
9   Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages.").
10  At the preliminary approval stage, the court "must make a preliminary determination on
11  the fairness, reasonableness, and adequacy of the settlement terms." *Woodard v. Labrada*,
12  No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *3 (C.D. Cal. Apr. 23, 2019)
13  (quoting Manual for Complex Litigation (Fourth) § 21.632 (2012)).    However, the
14  "settlement need only be *potentially* fair, as the Court will make a final determination of
15  its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D.
16  377, 386 (C.D. Cal. 2007) (emphasis in original).

17  **III.   DISCUSSION**

18          **A.    Rule 23(a)**

19          As discussed above, in the July 2025 Order, the Court previously concluded that
20  Rule 23's requirements of numerosity, commonality, typicality, and adequacy of
21  representation were all satisfied for purposes of preliminary certification. *See* (July 2025
22  Order at 6-9).  The Court reaffirms that conclusion.  The Class is still estimated to include
23  approximately 1,500 members, *see* (Mot. at 13); the claims involve common allegations
24  that Defendants maintained a policy and practice of not paying employees for all hours
25  worked; the claims of the Class Representative Plaintiff are typical of the Class because
26  they arise out of Defendants' alleged wage-and-hour policies; and both Plaintiff and
27  Plaintiff's Counsel appear to have adequately represented the interests of the Class.
28  Accordingly, the settlement class satisfies Rule 23(a) for purposes of preliminary approval.

**B.    Rule 23(b)**

Similarly, the Court reaffirms its holding as to Rule 23(b).  As the Court previously found, "[g]iven that the only claims here are based in allegations of a common policy or practice applied to all Class Members, Plaintiff has shown that common questions of law or fact predominate over individual questions."  (July 2025 Order at 11 (citing *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008)).  And adjudicating these claims on a class-wide basis is superior to other methods of adjudication because of the large size of the class, the small size of the individual claims, and the lack of any other ongoing litigation concerning this controversy of which the Court is aware.  *See* (July 2025 Order at 12).

**C.    Rule 23(e)**

While the Court previously found that Plaintiff had satisfied Rules 23(a) and (b), it denied preliminary approval on the grounds that Plaintiff had not shown that the proposed settlement was "fair, reasonable, and adequate," as required by Rule 23(e)(2).  Specifically, the Court identified the following deficiencies: (1) Plaintiff's estimates of the maximum potential recovery included certain unexplained assumptions and failed to include estimates for all of the claims being settled; (2) Plaintiff inadequately identified the costs, risks, defenses, and delays specific to his claims that would justify a lower settlement-to-potential-recovery ratio; (3) Plaintiff's proposed class payments did not account for differences in pay and hours worked among Class Members; (4) the proposed attorney's fees exceeded the standard Ninth Circuit benchmark and the Settlement Agreement contained a clear sailing provision; and (5) Plaintiff did not adequately explain the basis for awarding both a Class Representative Award and a General Release Payment.  (July 2025 Order at 24-25).  In light of Plaintiff's filing of an Amended Settlement, the Court will again consider whether Plaintiff has met the requirements of Rule 23(e)(2) for purposes of preliminary approval.

1    Under the 2018 amendments to Rule 23(e)(2), courts must determine whether a
2    proposed settlement is "fair, reasonable, and adequate" based on consideration of the
3    following factors:

4

5    (A)   the class representatives and class counsel have adequately
           represented the class;
6    (B)   the proposal was negotiated at arm's length;
     (C)   the relief provided for the class is adequate, taking into
7          account:
8          (i)    the costs, risks, and delay of trial and appeal;
9          (ii)   the effectiveness of any proposed method of
                  distributing relief to the class, including the method
10                of processing class-member claims;
11         (iii)  the terms of any proposed award of attorney's fees,
                  including timing of payment; and
12         (iv)   any agreement required to be identified under Rule
13                23(e)(3); and
14   (D)   the proposal treats class members equitably relative to
           each other.
15

16   Fed. R. Civ. P. 23(e)(2).

17         Before the 2018 revisions to Rule 23(e), the Ninth Circuit had developed its own list
18   of eight factors to be considered in assessing the fairness and adequacy of a proposed
19   settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).
20   The Ninth Circuit has not directly spoken to how the 2018 amendments fit with this list of
21   factors, though as one court has noted, the prior factors "correlate with the new language
22   of the rule." *Gagnier v. Siteone Landscape Supply LLC*, No. SACV 21-01834-CJC
23   (DFMx), 2023 WL 8116831, at *6 (C.D. Cal. June 6, 2023). The revised Rule 23(e)
24   "directs the parties to present [their] settlement to the court in terms of [this new] shorter
25   list of core concerns," and explains that the goal of the amendment was "to focus the
26   [district] court and the lawyers on the core concerns of procedure and substance that should
27   guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018
28   Advisory Committee Notes. Accordingly, the Court will examine the fairness of the

1    proposed settlement agreement in light of the amended 23(e) factors, but will consider the

2    pre-2018 factors "to the extent that they shed light on the inquiry mandated by the amended

3    Rule 23(e)." *Gagnier*, 2023 WL 8116831, at *6.

4         1.    Adequacy of Representation by Class Representatives and Class

5               Counsel

6         The first factor requires that the class representatives and class counsel have

7    adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). In the July 2025 Order, the

8    Court found that Plaintiff's Counsel had performed adequately, based on its thorough

9    investigation of the claims and its work negotiating the settlement. (July Order at 14).

10   However, the Court found that Plaintiff had provided inadequate information about the

11   work performed by the Class Representative Plaintiff. (*Id.* at 14-15).

12        Based on the new information submitted with the instant Motion, the Court finds

13   that Plaintiff's representation of the Class has been adequate. As noted in the July 2025

14   Order, Plaintiff's interests are substantially aligned with those of the Class. (*Id.*). In his

15   declaration, Plaintiff attests that he has spent between 40 and 50 hours assisting the

16   attorneys in this case, including discussing his job duties and responsibilities, reviewing

17   the draft complaint, answering questions, assisting with discovery responses, and

18   reviewing the settlement agreement. (Mejia Decl. ¶¶ 6-8, 12-15). Plaintiff's representation

19   therefore appears to be adequate. The Court otherwise reaffirms its finding of adequacy as

20   to Class Counsel.

21        2.    Arm's Length Negotiation

22        The second factor requires that the proposed settlement has been negotiated at

23   "arm's length." Fed. R. Civ. P. 23(e)(2)(B). Because "[c]ollusion may not always be

24   evident on the face of a settlement," courts "must be particularly vigilant not only for

25   explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of

26   their own self-interests and that of certain class members to infect the negotiations." *In re*

27   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Signs of

28   collusion include (1) when the agreement awards counsel a disproportionate share of the

1 settlement; (2) when the parties agree to a clear sailing arrangement through which the

2 defendants do not object to fee requests by class counsel; and (3) when the agreement

3 reverts unclaimed funds to the defendant rather than to the class fund. *Roes 1-2 v. SFBSC*

4 *Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

5      In the July 2025 Order, the Court found that there was no apparent unfairness on the

6 face of the negotiations but identified certain "subtle signs" that the agreement was not

7 fully fair, reasonable, and adequate. Specifically, the Court was concerned about the

8 provision assigning one-third of the gross settlement to attorney's fees and the clear sailing

9 agreement under which Defendants agreed "not to oppose or impede any application or

10 motion for attorneys' fees and costs." (July 2025 Order at 15-16). While the Court found

11 that this factor tended to support preliminary approval, the Court requested that Plaintiff

12 provide "a more detailed explanation" to justify the attorney's fees provisions in their

13 renewed motion. (*Id.* at 16).

14      Plaintiff's explanations do not fully address the Court's concerns. In the Motion,

15 Plaintiff argues that courts in this Circuit have routinely approved allocations of up to one-

16 third of the gross settlement amount, and he cites several such cases for the proposition that

17 a 30% fee award is typical. (Mot. at 26). However, while it is true that courts have

18 approved such settlements, "[t]his circuit has established 25% of the common fund as a

19 benchmark award for attorney's fees." *Hanlon*, 150 F.3d at 1029. In departing from this

20 benchmark, "it must be made clear by the district court how it arrives at the figure

21 ultimately awarded." *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (citation

22 omitted). For example, courts may consider factors such as "the result achieved, the risk

23 involved in the litigation, the skill required and quality of work by counsel, the contingent

24 nature of the fee, awards made in similar cases, and the lodestar crosscheck."

25 *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (citation

26 omitted). Plaintiff has not identified any such factors in this case that would justify an

27 upward departure from the benchmark, nor has he explained how this case is similar to

28 those in which courts have awarded higher rates. Consistent with its approach in other

1   similar cases, this Court is inclined to approve only the benchmark rate absent some

2   discussion of the special circumstances present here.

3          Nevertheless, this factor does not prevent preliminary approval.  In filing a motion

4   for final approval, Plaintiff may include a request for attorney's fees and highlight any

5   special circumstances that justify an upward departure from the Ninth Circuit's benchmark.

6   In the event the Court denies a portion of the requested attorney's fees, the Amended

7   Settlement provides that the excess portion "shall become part of the Net Settlement Fund

8   and be available for distribution to the Class Members."  (Amended Settlement at 8).

9   Accordingly, the Court finds that this factor favors preliminary approval at this time.

10                    3.      Adequacy of the Relief

11         The third factor requires the court to consider: "(i) the costs, risks, and delay of trial

12  and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

13  including the method of processing class-member claims; (iii) the terms of any proposed

14  award of attorneys' fees, including timing of payment; and (iv) any agreement required to

15  be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The Court considers these

16  factors in turn.

17                    a)      *Costs, Risks, and Delay of Trial and Appeal*

18         In assessing this factor, "courts may need to forecast the likely range of possible

19  classwide recoveries and the likelihood of success in obtaining such results."  Fed. R. Civ.

20  P. 23(e), 2018 Advisory Committee Notes.  "The amount offered in settlement is generally

21  considered to be the most important consideration of any class settlement."  *Grady v. RCM*

22  *Techs., Inc.*, 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) (citation omitted).    In

23  determining whether the amount offered in settlement is fair, courts should "compare the

24  settlement amount to the parties' estimates of the maximum amount of damages

25  recoverable in a successful litigation."  *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14-0425

26  PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (internal quotation marks

27  and citation omitted).  However, "a cash settlement amounting to only a fraction of the

28  potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego*

1    *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  "Even a

2    fractional recovery of the possible maximum recovery amount may be fair and adequate in

3    light of the uncertainties of trial and difficulties in proving the case."  *Millan v. Cascade*

4    *Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. Oct. 8, 2015).

5         The Court previously found that Plaintiff provided insufficient information and

6    therefore concluded that this factor weighed heavily against preliminary approval.  The

7    Court first identified several unexplained assumptions in Plaintiff's estimates of the

8    maximum possible recovery: (1) Plaintiff conservatively estimated that employees were

9    deprived of a single meal and rest break each week, but failed to explain why that estimate

10   was reasonable; (2) Plaintiff assumed an average of thirty minutes of off-the-clock

11   overtime per week without explaining the basis; and (3) Plaintiff did not explain the basis

12   for estimating reimbursement costs of $5 per week for use of a personal cellphone and

13   $180 per employee for protective equipment.  (July 2025 Order at 18).  The Court also

14   expressed concern that the estimated maximum recovery failed to include any estimates

15   for the minimum wage and timely wage claims listed in the FAC.  To explain the discount

16   rates applied to some of the claims, the Court also requested that Plaintiff provide further

17   explanation of the particular strengths and weaknesses of his claims as well as potential

18   defenses to those claims.

19        Plaintiff's renewed Motion addresses these deficiencies.  On the meal break claim,

20   Plaintiff's Counsel now explains that, from a review of Defendant's time and wage records,

21   approximately 19.2% of all shifts exhibited an unpaid meal period violation.  (Perez Decl.

22   ¶ 14).  Plaintiff's Counsel argues that this estimate remains conservative because some

23   violations were not recorded.  As to rest breaks, Plaintiff's Counsel states that no records

24   exist, but he asserts that an estimate of one violation per week is reasonable given the meal

25   period data.  (*Id.* ¶ 16).  On the unpaid minimum wage and overtime claims, Plaintiff's

26   Counsel estimates 5 minutes of pre-shift off-the-clock and 5 minutes of post-shift off-the-

27   clock work, plus an additional 10 minutes of off-the-clock work associated with meal

28   period violations.  (*Id.* ¶ 19).  From these numbers, Plaintiff's Counsel estimates one hour

1  of unpaid work per week, of which half was overtime. (*Id.*). On the unpaid reimbursement

2  claim, Plaintiff's Counsel cites to monthly cellphone plans to reach a conservative estimate

3  of $5 per week in expenses, in addition to a one-time expense of $180 that Plaintiff spent

4  on necessary protective equipment. (*Id.* ¶ 21). Plaintiff's Counsel also provides new

5  estimates of the minimum wage and timely wage claims that were not included in the

6  previous motion. *See* (*id.* ¶¶ 19, 24, 47). Finally, Plaintiff's Counsel has provided detailed

7  discussion of defenses that Defendant could have raised to the claims. (*Id.* ¶¶ 26-44).

8  Plaintiff's Counsel now estimates a maximum potential recovery of $19,776,300 and a

9  "realistic recovery" of $2,295,295. (*Id.* ¶ 47). Given the $1,270,000 proposed settlement,

10  this means that the Class would recover approximately 6.4% of the maximum recovery and

11  55.3% of the realistic recovery.

12  　　　"It is well-settled law that a cash settlement amounting to only a fraction of the

13  potential recovery does not per se render the settlement inadequate or unfair." *Officers for*

14  *Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). Courts in this Circuit have,

15  at times, approved settlements with similar ratios to the proposed settlement here. *See,*

16  *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving

17  settlement "of almost $2 million" that was "roughly one-sixth of the potential recovery");

18  *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327 NC, 2014 WL 3610945, at

19  *5 (N.D. Cal. July 21, 2014) (noting that 8% recovery rate was "especially low," but

20  granting preliminary approval provided plaintiffs explain at final approval why the

21  "recovery is warranted based on the circumstances of this case"); *Millan*, 310 F.R.D. at

22  612 n.10 (noting that a recovery of "approximately six percent . . . would not be outside

23  the realm of possible approval considering the possible difficulties in Plaintiff's proof of

24  this case"). As Plaintiff argues, there are numerous obstacles to Plaintiff's recovery of the

25  maximum possible amount, including the lack of any formal policy of denying meal and

26  rest breaks, the need to show that Class Members did not voluntarily forego these breaks,

27  the lack of recorded proof of the overtime and minimum wage violations, the need to show

28  Defendants' knowledge that employees incurred business expenses, and Defendants'

-13-

1  argument that it acted in good faith, among others.  Given the difficulties particular to this

2  case, the Court is persuaded, for purposes of preliminary approval, that a 6.4% recovery

3  rate is reasonable and adequate.  This factor therefore weighs in favor of preliminary

4  approval.

5              *b)      Effectiveness of Proposed Method of Relief Distribution*

6         Next, the Court must consider the method for processing claims to ensure the

7  proposed method facilitates filing legitimate claims.  The Court previously found that the

8  proposed method of notifying Class Members and distributing settlement funds was

9  adequate, and the Amended Settlement has made no changes to the previous proposal.

10  However, the Court expressed concerns with the method of calculating individual

11  settlement payments because it failed to distinguish among employees based on their

12  weekly hours or hourly wages, resulting in a windfall for part-time and lower-wage

13  employees.  (July 2025 Order at 20-21).

14         The Amended Settlement addresses this concern.    Under the new proposal,

15  individual settlement payments will be calculated by (1) calculating the total number of

16  workweeks worked during the Class Period by each Class Member individually and by all

17  Class Members collectively; (2) dividing the net settlement fund by the total number of

18  work weeks and multiplying this number by each Class Member's hourly wage to calculate

19  each employee's "workweek value"; and (3) multiplying each individual Class Member's

20  total number of workweeks by their workweek value.  The Court finds that this formula

21  will better account for differences in wages among Class Members, ensuring that certain

22  segments of the Class do not receive preferential treatment.  Because the claims being

23  settled are predominantly for unpaid wages, the Court finds that it is appropriate to take

24  into account the differences in wages among the Class Members.  With this change, the

25  Court finds that this factor favors preliminary approval.

26              *c)      Attorney's Fees*

27         The Court next considers "the terms of any proposed award of attorney's fees,

28  including timing of payment."  Fed. R. Civ. P 23(e)(2)(C)(iii).  As discussed above, the

1   Court has concerns about the proportion of the settlement allocated to attorney's fees and

2   the clear sailing agreement between the parties.    However, the Court will withhold

3   judgment on this question until Plaintiff has filed his anticipated motion for attorney's fees.

4   In that motion, Plaintiff should focus his argument on the factors identified previously and

5   explain how counsel's efforts in this case differ from cases in which courts have applied

6   the benchmark rate.  Additionally, to assist the Court with the lodestar comparison, Plaintiff

7   should provide the approximate number of hours spent on this case and the corresponding

8   billing rates for the attorneys who worked those hours.   Notwithstanding the Court's

9   concerns, for purposes of preliminary approval, the Court finds that the attorney's fees are

10  within the range of rates that courts have previously approved.

11          *d)        Agreements Required to Be Identified Under Rule 23(e)(3)*

12          Rule 23(e)(3) requires the parties to "file a statement identifying any agreement

13  made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  Because the parties here

14  filed no such statement, the Court considers this factor to be neutral.

15          4.     Equitable Treatment Among Class Members

16          Lastly, Rule 23(e) requires examination of whether a proposed settlement "treats

17  class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The Court

18  previously expressed concern about the calculation method for apportionment of class

19  payments, but, as discussed above, those concerns have now been addressed.

20          The Court also expressed concern about the Class Representative Award.  The Court

21  indicated that, while a $5,000 Class Representative Award is within the range that courts

22  typically approve, there was insufficient information about Plaintiff's contributions for the

23  Court to analyze.  The Court also expressed concern with the proposed $10,000 General

24  Release Payment, which, in the absence of any information about the released claims,

25  appeared "more like a supplement to the Class Representative Award than a separate

26  payment in exchange for consideration." (July 2025 Order at 24).  For the instant Motion,

27  Plaintiff has provided a declaration attesting that he spent more than 40 hours working on

28  this case, which substantially addresses the Court's concerns about the Class

1    Representative Award.  *See* (Mejia Decl.).  Plaintiff also indicates that, as part of the

2    general release, he is waiving all claims related to his employment including an anticipated

3    wrongful termination claim that he attests has "independent value . . . [and] makes up a

4    major fraction of the value of the Enhancement Payment." (*Id.* ¶ 17).  The Court finds this

5    information sufficient for purposes of preliminary approval.  For final approval, however,

6    the Court would benefit from further information about the released claim, such as

7    "calculations reasonably justifying these amounts based on the estimated value of [the]

8    individual claims." *Parker v. Cherne Contracting Corp.*, No. 18-cv-01912-HSG, 2021 WL

9    5834227, at *9 (N.D. Cal. Dec. 9, 2021); *see also Atchison v. Ashley Furniture Indus., Inc.*,

10   No. ED CV17-00528 JAK (SPx), 2019 L 12536043, at *16 (C.D. Cal. Mar. 4, 2019)

11   (evaluating general release payment based on "a declaration setting forth the basis for [the

12   plaintiff's] possible wrongful termination claim").

13                    5.    Weighing the Factors

14          Based on the above discussion, the Court finds that all the factors favor granting

15   preliminary approval.  While the Court remains concerned about the attorney's fees and

16   general release payment, Plaintiff will have an opportunity to provide more detailed

17   briefing on these issues in his anticipated motion for attorney's fees and class representative

18   service payments.  The renewed Motion otherwise addresses all the concerns identified by

19   the Court in the July 2025 Order.  Accordingly, the Court GRANTS preliminary approval

20   of the class settlement.

21          **D.    Sufficiency of Notice**

22          Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that

23   is practicable under the circumstances, including individual notice to all members who can

24   be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule

25   23(e)(1) requires that a proposed settlement may only be approved after notice is directed

26   in a reasonable manner to all class members who would be bound by the agreement.  Fed.

27   R. Civ. P. 23(e)(1).  Notice "is satisfactory if it generally describes the terms of the

28   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

1  come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (internal quotation

2  marks and citation omitted).

3       The Amended Settlement provides that, within thirty days of preliminary approval,

4  Defendants will assemble a list of Class Members from their internal records and provide

5  the list to the Settlement Administrator, which will mail a Class Notice to all Class

6  Members via first-class U.S. mail, using the most current, known mailing addresses

7  identified. (Amended Settlement at 2, 12).  Mailing the Notice to the last known addresses

8  of class members "constitutes the best practicable notice under the circumstances." *Trujillo*

9  *v. UnitedHealth Grp. Inc.*, 5:17-cv-2547-JFW (KKx), 2019 WL 13240414, at \*2 (C.D. Cal.

10  July 19, 2019).  Furthermore, for any returned notices, the Settlement Administrator will

11  send the Class Notice to any listed forwarding address or, if none is listed, conduct a skip

12  trace search to identify the Class Member's current address.  (Amended Settlement at 12).

13  The Court finds this method to be sufficient.

14       From the Court's review of the proposed Class Notice, the Court also finds that the

15  Class Notice clearly describes: (i) the nature of the action and class claims and the terms

16  of the Settlement Agreement; (ii) the definition of the class and the nature and extent of the

17  release of claims; (iii) the maximum attorney's fees; and (iv) the procedure and timing for

18  objections and requests for exclusion.  *See* (ECF No. 40-2 at 60-65).  Thus, the Court finds

19  that the proposed Class Notice sufficiently comports with due process.

20       Finally, the Court notes that the parties have provided no indication of compliance

21  with 28 U.S.C. § 1715.  Under that statute, "[n]ot later than 10 days after a proposed

22  settlement of a class action is filed in court, each defendant that is participating in the

23  proposed settlement shall serve upon the appropriate State official of each State in which

24  a class member resides and the appropriate Federal official, a notice of the proposed

25  settlement."  28 U.S.C. § 1715(b).  "An order giving final approval of a proposed

26  settlement may not be issued earlier than 90 days after the later of the dates on which the

27  appropriate Federal official and the appropriate State official are served with the notice."

28

1    *Id.* § 1715(d).  Defendants shall promptly comply with this this statute and file notice of

2    compliance on the docket following issuance of this Order.

3        **E.      PAGA**

4        Finally, the Court must consider the proposed PAGA settlement.   There are

5    "fundamental differences between PAGA actions and class actions," including that "class

6    certification is not required to pursue a PAGA representative action."  *Haralson v. U.S.*

7    *Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (internal quotation marks,

8    citation, and alterations omitted).  The plaintiff in a PAGA action acts "as the proxy or

9    agent of the state's labor law enforcement agencies," and any judgment "binds all those

10   who would be bound by an action brought by the government, *including* nonparty

11   employees."  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016)

12   (citation omitted).   "[B]ecause a settlement of PAGA claims compromises a claim that

13   could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and

14   approve any settlement of any civil action filed pursuant to [PAGA].'"  *Ramirez v. Benito*

15   *Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25,

16   2017) (quoting Cal. Lab. Code § 2699(s)(2)).   While the statute does not specify the

17   applicable standard for reviewing PAGA settlements, "a number of district courts have

18   applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is

19   fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."

20   *Haralson*, 383 F. Supp. 3d at 972 (internal quotation marks and citation omitted).

21       Plaintiff here estimates that the maximum potential liability under PAGA is

22   $2,000,000, based on the statutory $100 penalty for initial violations for approximately

23   20,000 pay periods within the PAGA period.  (Mot. at 31).  The Settlement Agreement

24   provides for a PAGA recovery of $100,000, with 75% allocated to the California LWDA

25   and 25% to the PAGA Members based on their share of the total PAGA pay periods.

26   (Amended Settlement at 9).  This amounts to 5% of the maximum potential PAGA liability

27   and approximately 7.9% of the total proposed settlement.

28

The Court finds that the proposed PAGA settlement is fair, adequate, and reasonable for purposes of preliminary approval. As the Court previously noted, the settlement amount is within the range of potential approval, whether measured relative to the maximum potential liability or the total proposed settlement. *See, e.g.*, *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *5 (N.D. Cal. Aug. 25, 2017) (approving PAGA penalty of "4.5% of total estimated possible recovery"); *Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 2:21-cv-01292-BAM, 2024 WL 4189936, at *16 (E.D. Cal. Sept. 13, 2024) ("The PAGA payment of approximately 3% of the Gross Settlement Fund falls within the range of penalties approved by courts."). Further, based on the Court's discussion above, the concurrent Rule 23 class settlement provides "fair compensation to the class members as employees" and therefore has a "deterrent effect upon the defendant employer and other employers, an objective of PAGA." *O'Connor*, 201 F. Supp. 3d at 1134 (applying a "sliding scale" approach to evaluate PAGA settlements made in conjunction with class settlements and stating that "if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled"). Given the class settlement and the fact that the PAGA settlement is within the range of approval, the Court concludes, for the purposes of preliminary approval, that the proposed PAGA settlement is fair, adequate, and reasonable.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion and ORDERS as follows:

1. The class and PAGA settlement as set forth in the Amended Joint Stipulation of Class Action and PAGA Settlement and Release (ECF No. 40-2 at 28) is preliminarily approved;

2. The Class as defined in the Amended Settlement is preliminarily certified for purposes of settlement;

3. For settlement purposes only, the Court hereby appoints:

   a. Plaintiff Edwin Mejia as Class Representative;

b. Capstone Law APC as Class Counsel; and

c. CPT Group, Inc. as the third-party Settlement Administrator;

4. The proposed Class Notices (ECF No. 40-2 at 60-65) must be disseminated to the proposed Settlement Class as provided in the Amended Settlement;

5. The Final Approval Hearing shall be held on April 8, 2026, at 1:30 p.m. in the United States District Court, Central District of California, Courtroom 5C, located at 350 W. 1st Street, Los Angeles, California, 90012;

6. The Court sets the following deadlines:

a. Plaintiff's motion for attorneys' fees, costs, and a class representative enhancement payment must be filed by January 19, 2026;

b. Plaintiff must file the motion for final approval of class action and PAGA settlement by February 26, 2026; and

c. Defendants' Counsel shall file with the Court a declaration attesting that notice has properly been served pursuant to 28 U.S.C. § 1715 at least ninety (90) days before the Final Approval Hearing.

**IT IS SO ORDERED.**

DATED:  November 21, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE